**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

ATTORNEY'S PROCESS AND
INVESTIGATION SERVICES, INC.,

           Plaintiff,

vs.

SAC AND FOX TRIBE OF THE
MISSISSIPPI IN IOWA,

           Defendant.

No. C-05-0168-LRR

**ORDER DENYING MOTION FOR
PRELIMINARY INJUNCTION**

———————————

## TABLE OF CONTENTS

I.     *PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     *A.*    *The Case in Tribal Court* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     *B.*    *The Case in This Court* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.    *FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.  *LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     *A.*    *Subject Matter Jurisdiction* . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

           *1.*    *Doctrine of Exhaustion of Tribal Court Remedies* . . . . . . . . . 8

           *2.*    *Exceptions to the Exhaustion Requirement* . . . . . . . . . . . . 10

               *a.*    *Tribal Court Bias* . . . . . . . . . . . . . . . . . . . . . . . . 11

               *b.*    *API's Counterclaims* . . . . . . . . . . . . . . . . . . . . . . 13

               *c.*    *Exemption from Exhaustion Requirement Due to
Arbitration Clause* . . . . . . . . . . . . . . . . . . . . . . . 15

     *B.*    *Sovereign Immunity* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

IV.  *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

The matter before the court is the Motion for Preliminary Injunction ("Motion") filed by Plaintiff Attorney's Process and Investigation Services, Inc. ("API") on November 4, 2005 (docket no. 12).

## I. PROCEDURAL BACKGROUND

On June 16, 2003, API and Alex Walker, Jr., who represented that he was the Chairman of the Tribal Council of the Sac and Fox Tribe of the Mississippi in Iowa, entered into a contract for services ("the Agreement"). The Agreement prompted two separate lawsuits in two separate courts. On August 3, 2005, Defendant Sac and Fox Tribe of the Mississippi in Iowa ("the Tribe") filed a tort action in the Court of the Sac and Fox Tribe of the Mississippi in Iowa ("Tribal Court"). *See Sac & Fox Tribe of the Mississippi in Iowa v. Attorney's Process and Investigation Services, Inc.*, Tribal Court Case No. API-CV-DAMAGES-2001-01 (August 3, 2005). On October 21, 2005, API filed an action in this court. API's Complaint alleges breach of contract and seeks a declaratory judgment.

### A. The Case in Tribal Court

The Tribe's complaint in the Tribal Court claims trespass to land, trespass to chattel, theft of tribal funds and misappropriation of trade secrets. The Tribe seeks compensatory and punitive damages. The Tribe alleges that API took possession of over $1 million in tribal funds between June and October 2003. The Tribe claims the "governing body" of the Tribe did not authorize the payment of funds to API and, consequently, demands the return of such funds. The Tribe alleges that, at about 6:00 a.m. on October 1, 2003, API forcefully entered the casino and the Tribe's executive offices with "30 enforcers," many of whom were armed. The Tribe alleges further that API damaged and destroyed tribal property, and obtained and exercised control over tribal

gaming commission information and confidential property. Finally, the Tribe alleges that the confidential property taken by API had substantial financial value to the Tribe, other gaming competitors and entities who contract with the Tribe.

On September 26, 2005, API moved to dismiss the Tribal Court action. It argued that the Tribal Court lacks subject matter jurisdiction because API is not a member of the Tribe. It also argued that, under the Agreement, any dispute should have been submitted to arbitration. On that same date, API made an arbitration demand to the Tribe. On October 20, 2005, the Tribe responded to API's motion to dismiss. A hearing on the motion to dismiss is scheduled for 1:00 p.m. on November 15, 2005, in Tribal Court.

### B. The Case in This Court

API's Complaint in this court contains two claims. First, API seeks a declaratory judgment that the Tribal Court is without jurisdiction over API and that exhaustion of Tribal Court remedies would be futile. Second, API claims the Tribe breached the Agreement by failing to arbitrate pursuant to the arbitration clause in the Agreement. API also seeks an order compelling arbitration pursuant to the Federal Arbitration Act.

On October 21, 2005, API filed a motion for immediate discovery on the issue of futility of exhausting tribal remedies. On November 2, 2005, the Tribe moved to dismiss the case alleging lack of subject matter jurisdiction. On November 4, 2005, API filed the instant Motion. In the Motion, API moves pursuant to Federal Rule of Civil Procedure 65(a) and Local Rules 7.1 and 65.1 to temporarily enjoin the Tribe from pursuing its action in Tribal Court until this court has determined two issues. The first issue is whether exhaustion of Tribal Court remedies would be futile because the Tribal Court allegedly does not provide an adequate forum for adjudicating the dispute between the parties. The second issue is whether exhaustion is required due to the arbitration clause in the Agreement.

On November 7, 2005, the court ordered API to file a supplemental brief on the issue of tribal sovereignty. On November 8, 2005, API filed a supplemental brief. On November 8, 2005, the court ordered the Tribe to file a responsive brief to API's Motion and supplemental brief. On November 10, 2005, the Tribe filed its responsive brief.

The court held a telephonic hearing on the Motion on November 14, 2005. Attorneys Diane Kutzko, Mark L. Zaiger and Richard S. Fry represented API. API President Dennis Nelson also participated in the hearing. Attorneys Steven F. Olson and Jeffrey S. Rasmussen represented the Tribe. Following the telephonic hearing, both parties filed supplemental documents. The matters are fully submitted and ready for decision.

## II. FACTUAL BACKGROUND

The Tribe is a federally recognized Indian Tribe which operates the Meskwaki Casino•Bingo•Hotel under a state-tribal compact with the State of Iowa. *See In re Sac & Fox Tribe of the Mississippi of Iowa/Meskwaki Casino Litig.*, 340 F.3d 749, 751 (8th Cir. 2003). A 1937 Tribal Constitution provides that the Tribe is to be governed by an elected council. *Id.* The Tribal Constitution did not establish an independent Tribal Court. *Id.*

This matter arises out of a tribal dispute, which first arose in the fall of 2002. At that time, Alex Walker, Jr. was the leader of the Tribe's elected council ("Walker Council"). *Id.* Members of the Tribe were dissatisfied with the Walker Council and sought to recall the council members through a special election. *Id.* Although the dissatisfied tribe members obtained enough signatures on their petition to hold the special recall election pursuant to the procedure set forth in the Tribal Constitution, the Walker Council refused to hold the special election. *Id.* The dissatisfied tribe members had no

legal remedy to the Walker Council's refusal to hold the election because there was not an independent tribal court. *Id.*

Members of the Tribe chose to pursue a self-help remedy of ousting the Walker Council. *Id.* On March 3, 2003, the hereditary Chief of the Tribe, Charlie Old Bear, appointed a new council under the leadership of Homer Bear, Jr. ("Bear Council") to run the Tribe. *Id.* By March 26, 2003, the Bear Council had taken control of most of the tribal facilities, including the casino. *Id.* at 752. The Bureau of Indian Affairs began recognizing the Walker Council as the leadership of the Tribe on April 1, 2003. *Id.*

On April 8, 2003, the Walker Council filed suit in this court against the Bear Council and the banks that had frozen tribal accounts.[1] *Id.* That suit, which included various claims pertaining to the intra-tribal dispute, was decided by the Eighth Circuit Court of Appeals on August 27, 2003. *Id.* at 751.

On June 16, 2003, API entered into the Agreement which was signed by Walker on behalf of the Tribe. The Tribe "engage[d] API for investigation, security and law enforcement consulting services[.]" The Agreement includes a provision which requires the parties to arbitrate any disputes arising out of the Agreement. The Agreement, in relevant part, provides:

> b. Arbitration
>
> i. The parties shall make efforts to settle through dialogue and negotiation any disputes that may arise out of this Agreement. However, should such efforts fail after thirty (30)

---

[1] The court takes judicial notice of the fact that the Tribe's leadership dispute was well publicized beginning as early as April 8, 2003. There were subsequent lawsuits filed in this court involving the Walker Council, the Bear Council, the United States of America, and the National Indian Gaming Commission. Each action was well publicized.

days, the dispute shall be submitted to arbitration, which shall be conducted in Des Moines, Iowa, in accordance with the Commercial Arbitration Rules of the American Arbitration Association. . . .

ii. . . . Judgment on the award of the arbitrator may be entered by the Federal District Court for the Northern District of Iowa under the Federal Arbitration Act or [an] Iowa state court pursuant to Iowa law. For this purpose, the Tribe and API hereby irrevocably consent to the jurisdiction over their persons of such courts for such purpose, including to enter judgment on an arbitration award, and waive any defense based on improper venue, inconvenient venue, or lack of personal jurisdiction.

iii. The failure of any party to submit voluntarily to arbitration shall be deemed to be a breach of this Agreement. Provided, that if either party has a good-faith position that a dispute does not arise under this Agreement, that party may file an action in the Federal District Court for the Northern District of Iowa, or the Iowa state courts, to determine whether the dispute is the proper subject of arbitration under this Agreement.

In its Complaint, API alleges the Tribe made partial payment for services rendered under the Agreement but stopped payments in November 2003. The Bear Council created the Tribal Court in 2005, well after the date when API entered into the Agreement with the Tribe. Neither party acted on the alleged breach until the Tribe filed its complaint in Tribal Court on August 3, 2005.[2]

_____

[2] The thrust of API's Motion is that exhaustion of tribal remedies would be futile because it would not have a fair opportunity to litigate its breach of contract claim. The court notes that API sat on its rights and its opportunity to pursue its breach of contract claim for nearly two years. API alleges the Tribe breached the Agreement in November of 2003, yet API did nothing to pursue a remedy until October 2005 or *after* it had been

(continued...)

## III. LEGAL ANALYSIS

### A. Subject Matter Jurisdiction

Before turning to the substantive issues raised by the Motion, the court must first determine whether there is subject matter jurisdiction in this case. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94-95 (1998); *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541 (1986). API bears the burden of proof in establishing the existence of subject matter jurisdiction. *See Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990).

API claims this court has federal question jurisdiction under 28 U.S.C. § 1331, which provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *Id.* A district court may exercise federal question jurisdiction if the court is satisfied that the claim is one "'arising under' federal law." *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians,* 471 U.S. 845, 850 (1985); *Iowa Mgmt. & Consultants, Inc. v. Sac & Fox Tribe of the Mississippi in Iowa,* 207 F.3d 488, 489 (8th Cir. 2000). In *Merrell Dow Pharmaceuticals Inc. v. Thompson,* the Supreme Court observed that there is no "single, precise definition" of whether a cause of action arises under federal law, but that "the phrase 'arising under' masks a welter of issues regarding the interrelation of federal and state authority and the proper management of the federal judicial system." 478 U.S. 804, 808 (1986) (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 8 (1983)).

---

[2](...continued)
sued by the Tribe in Tribal Court.

In *Gully v. First National Bank,* 299 U.S. 109, 112 (1936), the Supreme Court considered whether an action arose under federal law for purposes of applying 28 U.S.C. §§ 1331 and 1441 (district court's original and removal jurisdiction of actions "arising under" the Constitution, laws or treaties of the United States). The Supreme Court explained:

> How and when a case arises "under the Constitution or laws of the United States" has been much considered in the books. Some tests are well established. To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. . . . The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another. . . . A genuine and present controversy, not merely a possible or conjectural one, must exist with reference thereto . . . and the controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal. . . . Indeed, the complaint itself will not avail as a basis of jurisdiction in so far as it goes beyond a statement of the plaintiff's cause of action and anticipates or replies to a probable defense.

*Id.* at 112-13.

### 1. Doctrine of Exhaustion of Tribal Court Remedies

In its Complaint, API argues that there is federal question jurisdiction because the action "involves the power of a Tribal Court over a nonmember," rather than an intra-tribal dispute. It further argues that the court *should* exercise jurisdiction because exhaustion of tribal remedies as a matter of comity would be futile. In its motion to dismiss, the Tribe argues that this court lacks federal jurisdiction because neither the Federal Declaratory Judgment Act nor the Federal Arbitration Act provide an independent basis for jurisdiction. The Tribe further argues that, although the issue of a tribe's

jurisdiction over a third-party non-tribal member is a federal question, the exhaustion doctrine mandates that the Tribal Court must first determine whether it has jurisdiction.

Generally, a tribe may not exercise civil jurisdiction over non-Indian third parties. *See Montana v. United States*, 450 U.S. 544, 565 (1981). There are, however, two exceptions to this general rule. First, "[a] tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." *Id.* Second, a tribe has jurisdiction over non-Indians when the conduct of the non-Indian "threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *Id.* at 566.

API argues that this court should determine, in the first instance, whether the Tribal Court may properly assert its jurisdiction over API under one of the two *Montana* exceptions. However, "civil jurisdiction over the activities of non-Indians on reservations lands presumptively lies in tribal courts, unless affirmatively limited by a specific treaty provision or federal statute." *Bruce H. Lien Co. v. Three Affiliated Tribes*, 93 F.3d 1412, 1419 (8th Cir. 1996) (citing *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 16 (1987)). "[T]he examination of tribal sovereignty and jurisdiction should be conducted in the first instance by the tribal court itself." *Duncan Energy Co. v. Three Affiliated Tribes of Fort Berthold Reservation*, 27 F.3d 1294, 1299 (8th Cir. 1994) (citing *Nat'l Farmers*, 471 U.S. at 856).

The Supreme Court has clearly held that, *after* the parties have exhausted the remedies available in a tribal court, a district court has federal question jurisdiction to review whether a tribal court has exceeded the lawful limits of its jurisdiction. *Nat'l Farmers*, 471 U.S. at 856; *see Bruce H. Lien Co.*, 93 F.3d at 1421-22 ("The existence of tribal court jurisdiction itself presents a federal question within the scope of 28 U.S.C.

§ 1331."); *see also LaPlante*, 480 U.S. at 16 (applying *Nat'l Farmers*' exhaustion rule to diversity cases and holding that, in such cases, a federal court should "stay its hand in order to give the tribal court a full opportunity to determine its own jurisdiction" (internal quotations omitted)); *Bruce H. Lien Co.*, 93 F.3d at 1420 (noting that exhaustion of tribal court remedies is required "in matters related to reservation affairs"); *Kishell v. Turtle Mountain Hous. Auth.*, 816 F.2d 1273, 1276 (8th Cir. 1987) (requiring exhaustion of tribal court remedies as a matter of comity where federal court had diversity jurisdiction and even though there was no pending tribal court action). The requirement of exhaustion permits:

> a full record to be developed in the Tribal Court before either the merits or any questions concerning appropriate relief is addressed [in the federal district court] . . . [It will also] encourage tribal courts to explain to the parties the precise basis for accepting jurisdiction, and will provide other courts with the benefit of their expertise in such matters in the event of further judicial review.

*Nat'l Farmers*, 471 U.S. at 856-57.

### 2. *Exceptions to the Exhaustion Requirement*

There are three exceptions to this rule of exhaustion. Exhaustion of tribal court remedies is not required where: (1) exhaustion "is motivated by a desire to harass or is conducted in bad faith," (2) "the action is patently violative of express jurisdictional prohibitions," or (3) "exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction." *Id.* at 857 n.21.

API invokes the third exception to the exhaustion requirement—futility. API's futility argument has three prongs: (a) the Tribal Court is biased against API; (b) API will be unable to assert its breach of contract counterclaim in the Tribal Court; and (c) the arbitration clause in the Agreement excepts API from the exhaustion requirement. The

Tribe resists API's futility argument. The Tribe argues that API has shown no evidence of the Tribal Court's bias but has, instead, merely shown that the Tribal Court was created after the parties entered into the Agreement. The Tribe argues that API is not only allowed to bring and defend its claims in Tribal Court, but that API may pursue additional remedies in federal court after its tribal remedies are exhausted. Finally, the Tribe responds that the arbitration clause in the Agreement does not equate to futility because the Tribal Court must, in the first instance, determine whether the Agreement is valid. It argues that the Tribal Court has the exclusive jurisdiction over determining the enforceability of the Agreement because its validity hinges on an intra-tribal matter. The court will address these arguments in turn.

### a. Tribal Court Bias

API argues that, if the Tribal Court determines whether it has jurisdiction in the first instance, API would be deprived of an adequate opportunity to challenge the Tribal Court's jurisdiction. API asserts the Bear Council and the attorneys whom the Tribe has employed in the instant lawsuit "created the Tribal Court and enacted the dispute resolution provisions of its Code as well as Rules of Civil Procedure and other substantive law provisions." API further alleges: "On information and belief, some of the substantive law provisions were enacted with specific regard to API and litigation anticipated in the new Tribal Court against API." API claims that its due process and equal protection rights will be violated if the newly created Tribal Court determines whether it has jurisdiction.

In response, the Tribe argues that API has not shown futility with respect to its argument that the Tribal Court is biased because it has not presented evidence of bias. The Tribe argues that most of the Tribal Code provisions were developed by the Walker Council prior to the leadership dispute and that only minor revisions were made to the provisions subsequent to the Walker Council's overthrow.

11

A party asserting futility cannot merely assume that it would not receive a fair trial in a tribal court; it must present evidence of bias. *Duncan Energy*, 27 F.3d at 1301 ("The Supreme Court has declined to permit parties to excuse themselves from the exhaustion requirement by *merely alleging* that tribal courts will be incompetent or biased." (emphasis in original) (citing *LaPlante*, 480 U.S. at 18-19)); *see also Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth.*, 207 F.3d 21, 34 (1st Cir. 2000) (explaining that "the requirements for [the futility] exception are rigorous: absent tangible evidence of bias . . . a party cannot skirt the tribal exhaustion doctrine simply by invoking unfounded stereotypes"). The Supreme Court has also explained that the "alleged incompetence of [a tribal court] is not among the exceptions to the exhaustion requirement." *LaPlante*, 480 U.S. at 19. Here, API merely shows that the Tribal Court was created after it entered into the Agreement with Walker and that it was created by the Walker Council's rivals. It has presented no evidence that shows the newly appointed judges will be biased or unfair in this particular matter.[3]

API's belief that it will not receive fair treatment in Tribal Court is insufficient to support its claim of futility. *See Ninigret Dev. Corp.*, 207 F.3d at 34 (determining facts did not support the futility exception where the tribal court was a subset of the tribal council and plaintiff argued the court would "march in lockstep" with the position of the council); *A & A Concrete, Inc. v. White Mountain Apache Tribe*, 781 F.2d 1411, 1416-17 (9th Cir. 1986) (denying plaintiff's claim of futility based on bias and incompetence of tribal judge where plaintiffs failed to challenge the judge's qualifications at the tribal court

---

[3] The court notes the newspaper article provided by API as Exhibit C to its Complaint implies the opposite. The article indicates the Tribal Court is composed of three experienced judges from other tribes in other states—Elbridge Coochise of the Hopi Tribe of Arizona, Henry Buffalo, Jr. of Minnesota and Kimberly Vele of Wisconsin.

level because they believed the challenge would be unsuccessful); *White v. Pueblo of San Juan*, 728 F.2d 1307, 1313 (10th Cir. 1984) (finding no futility where the plaintiffs failed to file a complaint in Tribal Court because they believed it would be futile to seek a tribal remedy).  Because API has not presented evidence of the Tribal Court's bias, the court must presume the Tribal Court to be competent and impartial.  *See Duncan Energy*, 27 F.3d at 1301.

To the extent API argues that its exhaustion of remedies would be futile because the Tribal Court was not in existence at the time the Agreement was signed, such argument fails. The Eighth Circuit Court of Appeals has held that exhaustion is not required in a case where the tribal court was not in existence at the time the plaintiff filed suit in federal court.  *Krempel v. Prairie Island Indian Cmty.*, 125 F.3d 621, 623 (8th Cir. 1997); *see id.* at 624 (noting that the Supreme Court in *LaPlante* required exhaustion of all "*available* tribal court remedies *before instituting suit*" (emphasis in original)).  Here, API did not file suit in federal court until October 21, 2005.  The Tribal Court was necessarily operational at that time, because the Tribe filed its complaint against API in the Tribal Court on August 3, 2005.  Therefore, the *Krempel* exception to the exhaustion requirement is inapplicable.  API has not shown that it would be futile to exhaust its remedies in Tribal Court due to the court's alleged bias.

### b. API's Counterclaims

With respect to the second prong of API's futility argument or the assertion that counterclaims cannot be raised against the Tribe in Tribal Court, API states: "The Tribal Code expressly provides that the Tribe is immune from civil suit in Tribal Court and that the Tribal Court does not have jurisdiction to hear counterclaims against the Tribe." However, it provides no citations to authority for the former proposition.  The Tribe argues that API will have the "chance to bring its claims and defend the claims against it

in Tribal Court." It argues the Tribal Court does not expressly prohibit suits against the Tribe.

The Tribal Code provision cited by API (Section 5-4101(e)[4]) only states that the Tribal Court does not have jurisdiction over cross-claims and counterclaims asserted against the Tribe. It neither prohibits API from filing a complaint against the Tribe in Tribal Court for its breach of contract claims nor does it provide that the Tribe is "immune from civil suit in Tribal Court."

Section 5-4101(e) could be read as the Tribal Court's way of simplifying lawsuits, rather than a complete bar to claims against the Tribe. However, even if Section 5-4101(e) is interpreted to mean that API may not bring a counterclaim against the Tribe, API has not shown that it is exempt from exhausting its Tribal Court remedies. API has not shown that it is prohibited from bringing a separate breach of contract claim against the Tribe in Tribal Court, in lieu of asserting a counterclaim in the pending Tribal Court action. The court notes that Tribal Code Section 5-4101(d) provides: "The Trial Court shall *not* have jurisdiction over any cause of action brought against the Tribe . . . , *unless* such jurisdiction is unequivocally and expressly granted by the laws of the Tribe . . . ." (emphasis added). Moreover, the Tribe's sovereign immunity from suit is not waived by the Tribal Code. *See* Tribal Code §§ 5-1201 and 5-4101(d).

Taking the Tribal Code provisions together, it does not appear to absolutely prohibit suits against the Tribe in Tribal Court. However, it would be premature and inappropriate for this court to interpret the Tribal Code and determine whether the Tribal Court has subject matter jurisdiction over API's hypothetical future lawsuit. *Duncan Energy*, 27

---

[4] API cited Section 5-4101(d) of the Tribal Code, but the court notes the quoted text is actually taken from Section 5-4101(e).

F.3d at 1299 (explaining that the examination of jurisdiction should be conducted in the first instance by the tribal court). The court must defer to the Tribal Court to interpret the extent of its jurisdiction in the first instance.

The court finds API has not shown futility by arguing that it is prohibited from filing a counterclaim in the Tribal Court.

### c. *Exemption from Exhaustion Requirement Due to Arbitration Clause*

Finally, API argues that exhaustion is not required due to the arbitration clause in the Agreement and the requirement in the Agreement "that any dispute about the arbitrability of the dispute under the agreement be submitted in the first instance to the federal court." API misses the crucial issue in this case. Before the arbitration clause in the Agreement can be enforced, a court must determine whether the Agreement is valid. If Walker had authority to enter into the Agreement and it was validly formed, then, the court agrees that the arbitration clause should be enforced. If, however, on the other hand, Walker was without authority to enter into the Agreement on behalf of the Tribe and the Agreement is found to be an invalid and unenforceable contract, the provisions of the contract, including the arbitration clause, cannot be enforced. Therefore, the issue turns back to the question of whether this court or the Tribal Court should first exercise jurisdiction.

Clearly, the validity of the Agreement turns on whether Walker was authorized to enter into contracts on behalf of the Tribe. This court is without jurisdiction to determine whether the Walker Council or the Bear Council was the governing body of the Tribe at the time the Agreement was signed on June 16, 2003, because such a matter is an intra-tribal dispute. *See Longie v. Spirit Lake Tribe*, 400 F.3d 586, 589 (8th Cir. 2005) (explaining that federal courts should refrain from exercising jurisdiction pursuant to 28 U.S.C. § 1331 where the case involves an intra-tribal dispute); *In re Sac & Fox Tribe*, 340

F.3d at 767 (affirming district court's determination that it lacked subject matter jurisdiction to resolve an intra-tribal leadership dispute); *Smith v. Babbitt*, 100 F.3d 556, 559 (8th Cir. 1996) (determining there was no federal jurisdiction over an intra-tribal membership dispute).

This case poses a similar issue to the one posed in *Bruce H. Lien Co*. In *Bruce H. Lien Co.*, the tribe challenged the legal validity of a management contract due to the actions of the former chairman of the tribe who executed the contract. 93 F.3d at 1417. The tribe did not believe the former chairman had the authority to enter into the contract on behalf of the tribe. *Id*. In that case, the Eighth Circuit Court of Appeals noted: "This challenge to the document itself therefore calls into question all provisions contained therein . . . ." *Id*. It further determined: "Our examination leads us to the conclusion that the underlying issues regarding the contract's validity must be resolved before any other matter can be productively addressed." *Id*. at 1419. The Eighth Circuit Court of Appeals noted that such a resolution should be made "in the first instance in the Tribal Court" and further stated: "[The court believes] this entire litigation requires a logical focus which mandates the agreement's validity be addressed before all else." *Id*. at 1421. Similarly, this court finds the dispute over the Agreement's validity must be determined by the Tribal Court because the issue of whether Walker had authority to enter into the Agreement with API is at the heart of an intra-tribal dispute.

The court finds API has not met its burden of showing exhaustion of tribal remedies would be futile. Therefore, the court finds the exhaustion doctrine mandates either dismissal of this matter without prejudice or a stay of the proceedings in this court until tribal remedies have been exhausted. *See Nat'l Farmers*, 471 U.S. at 857; *Duncan Energy*, 27 F.3d at 1301.

## B. Sovereign Immunity

The court alternatively finds that it is without jurisdiction to proceed in this matter at this time because the Tribe may have sovereign immunity from API's claims. Indeed, the Tribe asserts it retains sovereign immunity from suit in this court. *See Hagen v. Sisseton-Wahpeton Cmty. College*, 205 F.3d 1040, 1044 (8th Cir. 2000) (noting that sovereign immunity is a "jurisdictional prerequisite which may be asserted at any stage of the proceedings"); *In re Prairie Island Dakota Sioux*, 21 F.3d 302, 304-05 (8th Cir. 1994) (explaining that "sovereign immunity is jurisdictional in nature[,]" but that it "is not of the same character as subject matter jurisdiction" because sovereign immunity can be waived and it operates as a defense to a cause of action).

Generally, an Indian tribe is immune from suit in state and federal court. *See Kiowa Tribe of Okla. v. Manuf. Techs., Inc.*, 523 U.S. 751, 754 (1998) (holding that an Indian tribe is not subject to suit in state court for breach of contract involving off-reservation commercial conduct because Congress did not authorize the suit and the tribe did not waive its immunity); *Weeks Constr., Inc. v. Oglala Sioux Hous. Auth.*, 797 F.2d 668, 670 (8th Cir. 1986) ("Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers.").

A tribe can choose to relinquish its sovereign immunity, but the waiver must be clear and unequivocal. *See C & L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe of Okla.*, 532 U.S. 411, 418 (2001) ("[T]o relinquish its immunity, a tribe's waiver must be 'clear.'") (quoting *Okla. Tax Comm'n v. Citizen Band Potawatomi Tribe of Okla.*, 498 U.S. 505, 509 (1991)); *Weeks Constr.*, 797 F.2d at 671 (noting that, "to be effective[,] a tribe's waiver of sovereign immunity must be unequivocally expressed"). A tribe may, for example, waive its sovereign immunity by entering into a contract that contains arbitration provisions. *See C & L Enters.*, 532 U.S. at 423 (holding that the arbitration

provisions in a construction contract constituted a waiver of the tribe's sovereign immunity because the tribe "clearly consented to arbitration and to the enforcement of arbitral awards in Oklahoma state court"). Where a tribe has not waived its sovereign immunity, federal courts have declined to hear cases against such tribe. *See Hagen*, 205 F.3d at 1043-44 (determining district court should have dismissed case against tribe due to sovereign immunity because the tribe's failure to answer employees' discrimination complaints was not an unequivocal waiver); *Dillon v. Yankton Sioux Tribe Hous. Auth.*, 144 F.3d 581, 584 (8th Cir. 1998) ("Because the Authority did not explicitly waive its sovereign immunity, we lack jurisdiction to hear this dispute.").

Here, API claims the Tribe waived its sovereign immunity by entering into the Agreement which contained an explicit arbitration clause. The court agrees that, if the Agreement is a valid and enforceable contract, the arbitration clause is a clear waiver of the tribe's sovereign immunity. *See C & L Enters*, 532 U.S. at 414-16. However, in this case, the very validity of the Agreement is in dispute. *Cf. id.* at 415-16 (determining arbitration clause in contract was a clear waiver of the tribe's sovereign immunity where there was no dispute over the validity of the contract). This court cannot make a determination as to the impact of the arbitration clause in the Agreement until a determination is made as to the validity and enforceability of the Agreement. *See Bruce H. Lien Co.*, 93 F.3d at 1417 (holding that the tribal court should first determine the contract's validity because the "challenge to the document itself . . . calls into question all provisions contained therein (including provisions relating to arbitration, sovereign immunity, and federal district court jurisdiction)"). As discussed in Section A.2.c herein, this intra-tribal dispute must be settled by the Tribal Court. This court cannot determine

whether the Tribe waived its sovereign immunity by agreeing to arbitrate disputes arising out of the Agreement until the Tribal Court determines whether Walker had authority to enter into the Agreement on behalf of the Tribe.

### IV.  CONCLUSION

Because the court finds that it has no jurisdiction over this matter at this time, it cannot reach the issue of whether injunctive relief would be proper.

For the foregoing reasons, **IT IS HEREBY ORDERED**:

(1)    Plaintiff Attorney's Process and Investigation Services, Inc.'s Motion for Preliminary Injunction (docket no. 12) is **DENIED**;

(2)    All proceedings in this case are **STAYED** pending exhaustion of tribal court remedies;

(3)    The parties shall not file any more papers in this action until the court lifts the stay ordered herein;

(4)    Plaintiff Attorney's Process and Investigation Services, Inc.'s Motion for Immediate Discovery (docket no. 3) is **DENIED AS MOOT AND WITH LEAVE TO RENEW IF NECESSARY** after the court lifts the stay ordered herein;

(5)    Defendant Sac and Fox Tribe of the Mississippi of Iowa's Motion to Dismiss (docket no. 8) is **DENIED AS MOOT AND WITH LEAVE TO RENEW IF NECESSARY** after the court lifts the stay ordered herein; and

(6)     Plaintiff Attorney's Process and Investigation Services, Inc. shall electronically file a notice of exhaustion of tribal remedies within ten days of a final decision in *Sac and Fox Tribe of the Mississippi in Iowa v. Attorney's Process and Investigation Services, Inc.*, Tribal Court Case No. API-CV-DAMAGES-2001-01 (August 3, 2005).

**IT IS SO ORDERED.**

**DATED** this 15th day of November, 2005.

LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA